UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KENNETH CHAPPLE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-130 |
| | § | |
| NATIONAL SHIPPING COMPANY OF | § | |
| SAUDIA ARABIA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.      Introduction

Pending before the Court is the defendants', National Shipping Company of Saudi Arabia

("NSCSA") and Mideast Ship Management Limited ("Mideast"),[1] motion for summary judgment

(Docket Entry No. 19).  The plaintiff did not file a response.  After having carefully reviewed

motion, the record and the applicable law, the Court grants the defendants' motion.

### II.      Factual Background

The plaintiff alleges that he sustained personal injuries while working as a longshoreman

aboard the M/V Saudi Hofuf.  NSCSA owns the vessel, and Mideast manages the vessel.  When

the plaintiff allegedly sustained his injuries, he was employed by Shippers Stevedoring Company

("Shippers"), which was responsible for cargo operations aboard the vessel.  Neither NSCSA nor

Mideast supervised or controlled any of Shippers' cargo operations.

On November 12, 2009, the plaintiff performed primarily the same task from 7:00 a.m.

until 4:30 p.m.: repeatedly tightening chain binders with a cheater bar[2] to secure cargo on the

---

[1] The plaintiff also filed an *in rem* cause of action against the M/V Saudi Hofuf.

[2] A cheater bar is a metal bar or pipe that is attached to a wrench or handle to serve as an extension, allowing its user to generate additional torque on the wrench or handle with the application of the same amount of force.

vessel.  The plaintiff does not allege any problems with his workplace or the cheater bar until the alleged incident that occurred at approximately 4:30 p.m.  The plaintiff acknowledges that he, as an experienced longshoreman, had an obligation to report any circumstance or condition he felt presented a safety issue, but that he noticed no safety issues and lodged no complaints.

The plaintiff admits that the cheater bar did not break.  Rather, he contends that the cheater bar slipped off a binder when he and a co-worker were using it, causing him to fall down twice and injure himself.  Prior to using the cheater bar, the plaintiff personally observed its open and obvious installation on the chain binder.  Although he speculates that the cheater bar was too big, he cannot state why it slipped.

The Court has original jurisdiction over this dispute under 28 U.S.C. §§ 1331 and/or 1332, because this action arises under 33 U.S.C. §§ 901, 905(b), complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III.    Contentions of the Parties

### A.      The Defendants' Contentions

The defendants contend that Shippers is the stevedore expert and that the defendants are entitled to rely on Shippers and its employees to act with reasonable care.  The defendants allege that Shippers is primarily responsible for the safety of its longshoremen.   The defendants maintain that the Longshore and Harbor Workers Compensation Act ("LHWCA") is the plaintiff's exclusive remedy for his alleged injuries and that they did not breach any duty owed to him.  First, the defendants assert that they did not breach their turnover duty because the vessel and cheater bar were turned over to Shippers with no hidden defects.  Second, the defendants aver that they did not breach their control duty because Shippers had exclusive control of the

cargo operations at all relevant times.  Finally, the defendants claim that they did not breach their duty to intervene because no hazard existed or developed that triggered that duty.

### B.     The Plaintiff's Contentions

The plaintiff contends that the defendants are jointly and severally liable under the doctrine of *respondeat superior* for proximately causing his injuries.  He contends that he was injured by falling twice because the defendants negligently furnished and instructed him to use the vessel's equipment in the course and scope of his employment.  He asserts that the defendants breached their duty of reasonable care over equipment within their control, and that they breached their duty to provide him with a reasonably safe place to work.  Specifically, he maintains that the defendants breached their duties to inspect, repair and maintain in safe working condition all appurtenances, gear and other vessel equipment that they furnished to the plaintiff and required him to use without adequate warnings, including the cheater bar.

### IV.     Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis

omitted)).    Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380).   Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

The plaintiff in this case has not filed a response to the defendants' motion for summary judgment.  According to the Court's local rules, responses to motions are due within twenty-one days unless the time is extended.   S.D. Tex. L.R. 7.3.   A failure to respond is "taken as a representation of no opposition."  S.D. Tex L.R. 7.4.  Notwithstanding the plaintiff's failure to file a response, summary judgment may not be awarded by default.  *See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).  "A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule."  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) (citing *Hibernia Nat'l Bank*, 776 F.2d at 1279).  To this end, the defendants, as "[t]he movant[s have] the burden of establishing the absence of a genuine issue of material fact and, unless [they have] done so, the court may not grant the motion, regardless of whether any response was filed."  *See Hetzel*, 50 F.3d at 362 n.3.  Nevertheless, in determining whether summary judgment is appropriate, a district court may accept as undisputed the facts set forth in the motion.  *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) (internal citations omitted).

## V.    Analysis and Discussion

The Court grants the defendants' motion for summary judgment because the Court finds that no genuine issue of material fact exists that could subject the defendants to liability.  The

LHWCA provides the exclusive remedy for longshoremen employees injured while subject to the LHWCA. *See* 33 U.S.C. § 905(b). It creates an action for those employees against the vessel (including its owner) on which they were working when injured, and expressly provides that it is the employees' exclusive remedy against the vessel. *See* 33 U.S.C. § 905(b). The plaintiff contends that he was working aboard a vessel owned and operated by the defendants and was in the course and scope of his employment as a longshoreman at the time of his alleged incident.[3] Accordingly, his claims are governed exclusively by the LHWCA.

Vessel owners owe certain duties to longshoremen for purposes of causes of action asserted under the LHWCA. *See Scindia Steam Navigation Co. Ltd. v. De Los Santos*, 451 U.S. 156, 165 (1981). Nonetheless, "the primary responsibility for the safety of the longshoremen rests upon the stevedore." *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1245 (5th Cir. 1997) (citing *Randolph v. Laeisz*, 896 F.2d 964, 970 (5th Cir. 1990)). "As a general matter, the shipowner may rely on the stevedore to avoid exposing the longshoremen to unreasonable hazards." *Scindia*, 451 U.S. at 170.

The LHWCA "requires the stevedore, the longshoremen's employer, to provide a 'reasonably safe' place to work and to take such safeguards with respect to equipment and working conditions as the Secretary of Labor may determine to be necessary to avoid injury to longshoremen." *Id.* (citing 33 U.S.C. § 941). "The ship is not the common employer of the longshoremen and owes no statutory duty to them." *Scindia* at 170. Furthermore, "[t]he shipowner has no general duty to discover dangerous conditions 'that develop within the

---

[3] The plaintiff filed suit against both NSCSA and Mideast, who are the owner and manager of the vessel, respectively. The plaintiff treats the defendants collectively, and therefore so does the Court in this memorandum opinion and order. Most of the case law cited below refers to vessel owners rather than to vessel managers. Nonetheless, the plaintiff has cited no reason why the defendants should not be treated collectively, particularly because the plaintiff was employed by Shippers – not by either defendant.

confines of the cargo operations that are assigned to the stevedore.'" *Futo v. Lykes Bros. S.S.*

*Co., Inc.*, 742 F.2d 209, 213 (5th Cir. 1984) (citing *Scindia* at 170).

The Fifth Circuit interprets *Scindia* as outlining three limited circumstances under which

a vessel owner may be liable to a longshoreman for personal injuries sustained while in the

course and scope of his employment aboard a vessel:

> 1) if the vessel owner *fails to warn* on turning over the ship *of hidden defects* of which he should have known [breach of the turnover duty].
>
> 2) for injury caused by hazards under the control of the ship [breach of the control duty].
>
> 3) if the vessel owner fails to intervene in the stevedore's operations when he has *actual knowledge* both of the hazard and that the stevedore, in the exercise of 'obviously improvident' judgment intends to work on in the face of it and therefore cannot be relied on to remedy it [breach of the duty to intervene].

*Greenwood*, 111 F.3d at 1245 (internal citations omitted).

The Court determines that the plaintiff has not sufficiently implicated any of these

exceptions to the LHWCA's general prohibition of vessel owner liability.   The plaintiff's

speculation that the cheater bar was too big does not create a material fact issue because: (1) he

testified that he knows how to use a cheater bar safely; (2) he used it all day without any

problems prior to the alleged incident; (3) he personally verified that it was properly installed

immediately before the alleged incident; (4) the cheater bar did not break; (5) he and his co-

worker had exclusive control of the cheater bar; and (6) the plaintiff cannot explain why the

cheater bar allegedly slipped.

### A.      The Turnover Duty

The Court finds that the plaintiff has not raised a genuine issue of material fact to

implicate the turnover duty.  The turnover duty requires the vessel owner to:

have the ship and its equipment in such a condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to [warn] the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious or anticipated by him if reasonably competent in the performance of his work.

*Scindia* at 167 (internal citation omitted).  To establish vessel owner liability under this duty, a plaintiff must first show that a defect in the ship or its equipment caused the injury at issue, and then show that "the vessel owner had actual [or constructive] knowledge of the defect." *Greenwood* at 1246.

The plaintiff does not implicate the turnover duty because he fails to sufficiently articulate an alleged vessel defect or to produce any evidence to support his conclusory allegations.  The plaintiff has not provided a genuine issue of material fact to show that the cheater bar was defective.  Shippers and its employees, including the plaintiff, had exclusive supervision and control of the cheater bar for at least nine hours prior to the plaintiff's alleged incident, and no problems or complaints were reported during that time period.  Therefore, the Court determines that the turnover duty is inapplicable.[4]

---

[4]  Nor does the "no alternative" exception to the turnover duty apply.  Under this exception, a shipowner may still face liability for an open and obvious condition if the longshoreman's only alternative to continuing to work with the dangerous condition is to use unduly impracticable or time-consuming methods, or to lose his job.  *See, e.g., Moore v. M/V ANGELA*, 353 F.3d 376, 381 (5th Cir. 2003) (internal citations omitted); *Manuel v. Cameron Offshore Boats, Inc.*, 103 F.3d 31, 34 (5th Cir. 1997).  This alternative is narrow because the shipowner is entitled to rely on the stevedore, as an expert in his field, to exercise reasonable care.  *See Morris v. Compagnie Maritime Des Chargeurs Reunis*, 832 F.2d 67, 71 (5th Cir. 1987); *see also, Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 99 (1994).

The plaintiff has offered no evidence that the cheater bar was incapable of safe use by an experienced stevedore exercising reasonable care when the vessel was turned over to Shippers.  Where the stevedore falls below the standard of reasonable care in "failing to notice and take the easy steps that would have avoided the obvious danger presented," the "no alternative" exception does not apply, the shipowner has not breached a duty, and the injured worker "must look only to his employer for compensation for his injuries." *Morris*, 832 F.2d at 71.

Case 4:10-cv-00130   Document 20   Filed in TXSD on 01/13/11   Page 9 of 10

## B.     The Control Duty

The Court finds that defendants did not breach their control duty to the plaintiff.  The control duty imposes liability on a shipowner for an injury caused by a hazard under its control. Specifically, the vessel has a duty to "exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Scindia* at 167.  However, if a vessel "has relinquished control over an area to the stevedore, then it is the primary responsibility of the stevedore to remedy a hazard in that area." *Pimental v. LTD Canadian Pacific Bulk*, 965 F.2d 13, 16 (5th Cir. 1992).  Where, as here, the ship has been turned over to the stevedore for cargo operations, and any of the ship's equipment is being operated by employees of the stevedoring company, the ship has no active control over the cargo operations, and thus is not subject to liability under the control duty.  *See Pimental*, 965 F.2d at 16*; see also, Fontenot v. U.S.*, 89 F.3d 205, 208 (5th Cir. 1996).

## C.     The Duty to Intervene

The Court determines that the defendants did not breach their duty to intervene because they did not fail "to intervene in the stevedore's operations when [having] *actual* knowledge both of the hazard and that the stevedore, in the exercise of 'obviously improvident' judgment,' intends to work on in the face of it and therefore [could not] be relied on to remedy it." *Greenwood* at 1246 (internal citations omitted).  This narrow duty requires "something more" than mere knowledge of a dangerous condition.[5]  *Singleton v. Guangzhou Ocean Shipping Co.*, 79 F.3d 26, 29 (5th Cir. 1996).  When a stevedore takes over cargo operations, "it is the

---

[5] This "something more" may "be satisfied if the accident is caused by a defective condition of the ship itself, its gear, or equipment," or if the shipowner had knowledge "that the longshoreman's employer is not acting reasonably to protect its employees from that danger."  *Casaceli v. Martech Int'l.*, 774 F.2d 1322, 1327-28 (5th Cir. 1985) (internal citations omitted).

9 / 10

*stevedore*, not the shipowner, who assumes the responsibility for the safety of its employees," and the shipowner is entitled to rely on the stevedore's expertise to remedy dangerous conditions. *Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 215-16 (5th Cir. 1984).

There is no evidence that the defendants had any actual knowledge of the alleged hazard and/or defective condition, nor is there any evidence of "something more" than actual knowledge of an alleged hazard. *See Singleton*, 79 F.3d at 29. Accordingly, the Court determines that the defendants did not breach their duty to intervene.

## VI.    Conclusion

Based on the foregoing discussion, the Court GRANTS the defendants' motion for summary judgment. In light of the fact that the Court finds summary judgment appropriate, a dismissal of the plaintiff's *in rem* action against the M/V Saudi Hofuf is also appropriate.

It is so **ORDERED**.

SIGNED at Houston, Texas this 13th day of January, 2011.

_____

Kenneth M. Hoyt
United States District Judge